Good morning. Judge Stapleton and I are pleased to welcome Judge Arthur Alarcon of the Ninth Circuit Court of Appeals, who is with us to hear our cases today and tomorrow. And we owe special thanks to Judge Alarcon because he sat with our court last week as well. So he's fond of our city and our court and it's a mutual admiration. So thank you, Judge Alarcon. Thank you. All right. We'll start with our first case of the morning, American Millennium Insurance v. First Keystone et al. Hello. Good morning, judges. I'm Fred Gerson from DelSando, Iacobino & Gerson. I represent the appellates. I would like to reserve three minutes for rebuttal, please. All right. Okay. Judges, this case was brought because the defendants' ROGs are violating various New Jersey statutes regarding financial responsibility. If you could speak into the mic and pull it closer to you. I'm sorry. Thank you. Financial responsibility. I indicated that the case was brought because the defendant ROGs are violating various New Jersey statutes regarding financial responsibilities. Financial responsibilities owed by what type of entities? Owed by insurance companies. And are they insurance companies? They certainly are insurance companies. That was, I believe that Judge Kavanaugh below referred to them as cooperatives. But they're similar to mutual insurance companies, mutual companies, because, Your Honor, they're owned by policyholders. Mutual insurance companies are owned by their insurers. It's the same thing. The federal regulation regarding ROGs defines them as insurance companies, as I set forth in my brief. They define themselves as insurers in their policies. They refer to themselves as insurers. The circuit courts that discuss these types of cases, and I acknowledge that there's a little difference in the circuits as to whether the exception applies or not. And so I'm pleased that we have a Ninth Circuit judge here where the Ninth Circuit came on the other side. But even that referred to them when they talked about the case. I'm free to not follow the Ninth Circuit. I understand that. He's with us today. I'm trying to convince you to go back and tell your colleagues what the Third Circuit should do. And what I'm saying is even in those cases, they start off by saying insurer, and then they'll announce it. They'll say the name. A judge, if it walks like a duck, quacks like a duck, they insure their policyholders. It's an insurance company. By all respects, they're just a cooperative. It's a question of legislative intent, right? Yes. Did the New Jersey legislature think they were treating RRGs the same way as other insurers? I believe that the legislature For example, the statute that you rely on that says you can't file a you can't, in effect, defend an action unless you post a bond or get a certificate of authority. Correct. An RRG can't get a certificate of authority in New Jersey, can it? The RRG statute doesn't provide for certificates of authority. That's correct, Your Honor. Therefore, they'd have to post a bond because they're not authorized. It's that simple. It says any insurer not authorized, they're an insurer, as I believe and argue, and therefore they need to post a bond before they get to this point. But if a state other than the state in which the RRG is chartered is not permitted by federal law to regulate, in any way, the operation of an RRG, how could New Jersey possibly prohibit an RRG from participating in court proceedings or otherwise performing functions in New Jersey? Isn't the federal statute pretty broad that New Jersey has to keep hands off when the RRG is chartered in another state? I think that the federal statute has an exception, and that's what this case is about is the exception under financial responsibility. This case was brought pursuant to the exception of financial responsibility. Therefore, I don't think that the federal statute, when you consider the exception, says that they can not abide the New Jersey statutes and not post a bond. Aren't all New Jersey insurers required to participate in a New Jersey insolvency guarantee fund? Yes. Well, the statute with respect to RRGs says that you've got to put on your policy a notice, quote, state insolvency guarantee funds are not available for your risk retention group. That's correct. Well, you just told me that all insurance companies are subject to that guarantee fund, but the RRGs are not. If I said that, I misspoke. I apologize, Your Honor. The RRGs do not have to participate in the guarantee fund, and that's certainly under the federal regulations. But what they do have to participate in are the financial responsibility laws of the state of New Jersey. For example, having enough capital on hand and being authorized by the commissioner before they drive on the streets of New Jersey. And I think that's the crux of the case, and that's where the exception to the federal regulation lies. Well, the exception says nothing in this chapter shall preempt the authority of the state, et cetera, et cetera. As a condition for obtaining a license to permit, RRGs aren't licensed, are they? RRGs are not licensed. However, in order to ‑‑ I believe that under the two circuits that interpreted that, the 11th Circuit and the 7th Circuit, the Mears and Optimale case, they dealt with the same language. And they indicated that under similar financial responsibility laws, New Jersey has an absolute right, and I think under the exception and under the legislative intent of this section, as outlined very significantly in Mears and discussing the comments by the senators at the time of the passage, these are the kind of state financial responsibility laws that the exception was meant to provide. Let's talk about the private right of action now. Let's assume you're correct. Okay. What gives an insurance company in New Jersey the right to be the enforcer of insurance regulations under Court v. Ashe and under New Jersey case law? Your Honor, first ‑‑ Your brief doesn't give us a specific way to construe the statute so as to give you the enforcement right. I'm sorry, Judge. Well, it doesn't ‑‑ Your brief says there's a violation, we're being harmed, therefore ‑‑ I thought I went beyond that. I think that the legislative intent, or I argue that the legislative intent of Title 17, specifically 17.17.11 in the New Jersey statute gives me a private right of action under the Court v. Ashe case. How so? Because the statute provides that directors and incorporators are jointly and severally liable for all obligations incurred by the company for transacting business before it has a legal authority to do so. So, therefore, they're liable if any entity is riding on the streets of New Jersey, any taxi company, without a legal authority to do that, any director and incorporators are liable for the damage. Liability, that would be in a civil suit? Yeah. All right, we're talking here about an enforcement mechanism. Okay. You're not going to enforce the regulations because that's what you're trying to do. You're trying to enforce the regulations. I'm trying to enforce the regulations and I'm trying to obtain damages as a result of their failure to abide the regulations. So that whether or not it's enforced or not, I'm certainly entitled to damages for their failure to abide the regulations, and that's what I think 17.17.11 provides for me. Also, Your Honor, to further answer your inquiry, Judge Kavanaugh below said that, well, in discussing the court V.F. standards, we're not the type of entity, the insurer, who the statute was meant to protect. It's meant to protect policyholders. But I searched far and wide and I don't see. Exactly. Isn't that? I don't think that's so. I don't see where it says it's only to protect policyholders. I don't know why it's also not to protect in-state insurers who abide the regulations and are being harmed by it. How do you get over the case law in New Jersey that talks about the fact they won't imply remedies or infer a private right of action, the Gatos case, the in-rate commissioner of insurance order of 1992? I mean, there's case law that you're not going to infer a private right of action. Isn't that what you're doing? I thought not. I thought that I indicated that the statute itself, 17.17.11, gives me that private right of action. Against directors? Yeah, against. I don't think it's limited in scope. I think 17.17.11 broadly and loudly says that if I'm damaged as a result of the violations of this statute, I could bring the ‑‑ I'm entitled to civil remedies. And Your Honor brought up Gatos. And also under Gatos, aside from even if I'm wrong, I still have a common law action, even under pursuant to not just private right, but Gatos said you can have a common law right of action. I think that was under implied warranty or fair dealing, that toward action. Even if it's just under the violation, in that case it was the New Jersey Fair Automobile Insurance Act, FARA. So even if I'm wrong on the private cause of action, which certainly I'm not coming close to conceding, I still have a common law action. And I don't think that was denied by Judge Kavanaugh below. Judge Kavanaugh simply did not believe that my complaint set forth the cause of actions for tortious interference. Do you have a cause of action under New Jersey law based on the New Jersey internal revenue? Is there an income? There is an income tax in New Jersey, right? Yes. I mean, you say we're damaged because they're competing unfairly. They're not meeting the capital requirements. They're not up, up, up. Right. If one of your competitors failed to pay income tax and you concluded that that was why they were able to underbid you on contracts, would you have a New Jersey common law claim to recover your damages for the business you lost because they underbid you based on their failure to obey New Jersey law? I think I would have. And if not, what's the difference between this case and that one? Under this case, I think the difference is under the IRS case there's no particular statute that permits me to seek damages. And I think the case talking about the IRS case indicated that that was left to the sole remedy of the IRS to enforce. But you're asserting unfair competition. I'm asserting unfair competition because I think unfair competition is an evolving tort. And I think when we talk about unfair practices and unfair commercial morality, I think I'm entitled to discuss unfair competition. But I see my time's up, if I could finish the sentence. But more to my point, anyway, as far as tortious interference, I think the complaint was set forth every cause of action that's for tortious interference, and certainly the amended complaint did. And I think that Judge Kavanaugh abused his discretion not following the Brookshire standards. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. Good morning. I'm John Stone from the law firm of Dakota's Fitzpatrick Coal & Whistler for two appellees, Ocean Risk Retention Group, Inc., and Pinelands Insurance Company. Initially, as I think you heard in some of the appellant's remarks, the argument seems to be that because ROGs are involved with insurance, they are treated like insurance companies. And I respectfully submit that nothing could be further from the truth. There is a whole federal and state statutory regime that treats them differently, and as a matter of constitutional law, there is preemption. So all we're talking about is a very narrow window in the federal statute and an examination of the state statute. What do we need to decide?  Yes, Your Honor. Is this to be decided on failure to state a claim, on standing? Well, there's both. There's failure to state a claim because there is no cause of action and there is no violation. To get to that, if there's no standing? If there's no standing, you don't have to go any farther. The two overlap slightly factually, but because the reason there is no standing is because the statute was not designed to protect competing insurance companies. Indeed, it was designed to protect risk retention groups against competing insurance companies. Now, just as that analysis precludes standing, it also precludes a cause of action because since the statute was designed to protect the risk retention groups and not the competing insurance companies, there can be no cause of action that can be brought by the private insurance companies. Those same facts support both of those arguments, which in turn call for a dismissal of the complaint. Now... What about the provision that the appellant cites with respect to the liability of directors and officers? Does that not open the door to civil suits for damages? It does not for two reasons. Firstly, the only effect, the only exception to preemption is the financial responsibility law, which we can discuss in terms of its scope and what it means. But there is no case cited, there is nothing in the federal statute, and I submit respectfully that there is nothing in the appellant's briefs that say that the question as to whether or not there is a cause of action falls within the exception to preemption. So if there's no cause of action, if the only thing that's not preempted is whether or not a state can do certain financial responsibility laws, which I'd like to get to in a moment, then the cause of action doesn't even exist. Moreover, since you asked and there was discussion, the specific statute on which the appellant relies does not apply. That statute, if I may read a portion of it. Give us the cite, because I'm not sure. It's New Jersey Statutes Annotated 17,17-11. And it speaks to directors and officers, excuse me, directors and incorporators of a company organized under 17-33, which doesn't apply to risk retention groups. And then it says that there's a suit for obligations incurred by the company by reason of its having transacted any business before it has received legal authority to do so. That's not what this case is about. The plaintiff says, hey, you're not following financial responsibility laws. Now, we say that's not true and you've misconstrued what that means, but that certainly doesn't fall within the language of that statute. And there's no dispute that we have legal authority to operate in New Jersey. In fact, the court had been provided, and it's in the record, with documentation from New Jersey Department of Banking and Insurance that has allowed us to proceed. There's no question that we're proceeding lawfully. We're not trespassing into the state. There simply is no cause of action. And as I believe I heard counsel concede, the Gatos case on which the appellant relies allowed a cause of action based on a breach of the duty of good faith and fair dealing because there was a contract, because these two parties had taken on voluntarily duties with respect to each other. That's not what's happening here. There's no privy of contract. There's no contract. We're competing. And there's a federal statute that protects us, that protects us, because they want to foster and nurture risk retention groups because it's a good thing for the community of insurers. It provides cheaper insurance. I know it's not in the record, but just as a matter of insurance practice, are insurance companies a dying breed because of RRGs? It seems like a strange phenomenon. Well, candidly, I don't think that that's the case. I think the opposite is the case. I think insurance companies are doing very well. I don't have any statistics or reports to give you. It's my impression. And it's not in the record. It's my impression that insurance companies are doing very well. And in response to your question, I would note, and I think as I think out loud about it, that the court could even take judicial notice of this. New Jersey is a very densely populated state. I think it has more drivers per square mile than most states. So this is a great place to write automobile insurance. So I would be very surprised if insurance companies are having trouble in New Jersey. Mr. Stoltz, who can seek damages against directors under 171711? I believe that that can be brought by those who are affected by the violation. I've looked at the statute, and I don't see anything that says that it can be brought by a competing company, but I don't see a discussion of it. So I have to be candid with the court that I can't say I can hold up a prohibition. My argument is different than that. I'm not trying to duck the question. It's just that I don't see anything that discusses it. My point is different, which is that it only applies to insurance companies when you're operating before receiving permission. It's a very narrow window. It sounds like an undercapitalization. It has nothing to do with capitalization. It has nothing to do with financial responsibility laws. And I suppose it's an open question as to who could bring it. I would argue that the same analysis about whether you have a private cause of action in the context of the risk retention group statute would apply here because you have to figure out who that's supposed to benefit. And if that's supposed to benefit the insureds, which I think most insurance law does, then another company, a competitor, wouldn't have a cause of action either. I hope that's responsive to your question. At the end of the day, when your honors look at whether or not there's a cause of action, one of the things you have to look at is, well, who is this statute supposed to protect? And I do not see anything in the insurance law and the legislative history, anything that says we are passing these insurance laws to protect insurance companies. The fact of the matter is that all of the insurance laws are to protect the insureds because, not to be casual or flippant about it, because they have our money. And if they go under and something happens to me and I paid all those premiums, I'm not protected. So all of insurance law, including with respect to that statute, is designed to protect insureds. That being the case, there's no cause of action that a competitor could bring. Does the RRG in New Jersey have to file papers in order to be authorized? Let me make sure I get this right. There is a distinction between being authorized and admitted. That's referenced in the AFTAP case. So they're probably not authorized, but they are admitted? Yeah, I think it's the reverse, actually. I think that what happens is if you are in state, you're admitted,  and that's the significance there. Oh, no, I'm wrong. I apologize, Your Honor. Domestic insurers are authorized. Out-of-state insurers are admitted. So when he's pointing to before any insurer not authorized to transact business, you could say that doesn't apply because there's no way that an out-of-state RRG can get, quote, unquote, authorized. That's correct. I think that, as I believe Your Honor is observing, that the language, that word choice is significant, and the AFTAP case that discusses that distinction shows that it's a meaningful distinction. It's not just casual language. I did want to point out the risk retention statute in New Jersey, which is cited in my brief. And a New Jersey statute is annotated 17-47-A-4 applies to risk retention groups that are chartered in another state. And it has specific mechanisms, and the reason why subsection F is particularly important is it gives the commissioner of insurance the ability if you have a question about a foreign risk retention group to go to the chartering state and ask for information and to do things if they don't get a sufficient response within 60 days. That's significant for a number of reasons. First of all, just as a practice. Your light is on, so if you'd sum up. None of that's happened, and the presence of that statute precludes any cause of action. All right. Thank you so much. We'll hear from your colleague, Mr. Grayson. If you come to the microphone so we have it on the record, whatever you want to say. Okay. Thank you. Your Honors, I'm happy to waive my five minutes. I think counsel has addressed all of the issues adequately. I would just like to respond to one question asked by Judge Rendell in terms of the interplay between risk retention groups and licensed carriers in New Jersey and in the states generally. I've been involved in insurance regulation for close to 20 years, and I can tell you that as a general proposition, there are only a small percentage of risk retention groups operating in any given state. There are myriad reasons for it, not the least of which is we are not protected by guarantee fund coverage. It was set up by the federal government in order to address a situation where the licensed carriers were not providing insurance for product liability, and therefore there's a small niche that's met, but risk retention groups are not battling at the ramparts taking over the insurance industry in any state. All right. I was just curious. Thank you for the help. I'm content. I think in some respect it is part of the record, and I want to answer your question pointing to the record, Judge Rendell, about the dying breed. If you look at my amended complaint that I filed, I indicate the amended complaint sets forth that prior to the ROGs coming into the state, and I believe 2004, my client had 407 taxicab companies as clients, and after two years it was down to 17. So I suppose I can't answer the broad question, but narrowly. So there's competition. Well, there's unfair competition. Well. And because they're not abiding the financial risk. It's not just competition. There's always competition, and everyone's happy to have competition. That's why we live in this country. But there's also they set forth specifically an exception to the exemption, and I know that my friends on this side are relying on and pointing to the exemption. But there's an exception, and it's a broad exception for any statute seeking financial risk where you have to abide financial responsibility laws. That the state can regulate with respect to that. But you're saying that the insurance laws apply, and it seems to me that insurance versus ROG are two different animals. Insurance versus ROG. Under the Federal, under the Risk Retention Act, they define insurance and ROGs as insurance companies. It's what they are. They insure. And I think that. New Jersey treats them differently. New Jersey doesn't treat them. New Jersey doesn't treat them no differently than Florida did in Mears or Wisconsin did in Ophthalmotic. They treat them the same way. They're responsible. There's financial responsibility laws on the books. Now, if I don't have a private right of action, and counsel and Your Honor have brought up GATOS, and they distinguish GATOS by saying there's a contract. But that's what GATOS said. After saying there was no private right of action because there was no 171711 there, because there was no private right of action, can you, they asked the question, can you have a common law action when the violation is simply a violation of that statute? And the answer in GATOS was yes. They can. So if we demonstrate, as we have in the papers, that, for example, OCEAN doesn't have the capital requirements, doesn't have the net cash available that's required by the statutes, and that's part of the record, and because of that they could operate much cheaper and provide much cheaper policies, we're damaged. So if we don't have a private cause of action, we certainly under GATOS have a common right of action. Thank you. Thank you very much. Thank you, counsel. We'll take the matter under advisement.